IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEITH DAWN,
        Plaintiff

    v.

THE PRESS ENTERPRISE, INC.;
PAUL EYERLY; and
BRANDON EYERLY,
        Defendants

:   No. 4:23cv499
:
:   (Judge Munley)

## MEMORANDUM

Before the court for disposition is the motion to dismiss Plaintiff Keith Dawn's complaint filed by Defendant Press Enterprise, Inc., Defendant Paul Eyerly, and Defendant Brandon Eyerly (collectively "defendants"). The parties have briefed their respective positions, and the matter is ripe for disposition.

### Background[1]

Defendant Press Enterprise is a commercial printer and newspaper publisher which publishes a daily print newspaper and a news website. (Doc. 1, Compl. ¶ 1). Defendant Paul Eyerly serves as president of Defendant Press

---

[1] These brief background facts are derived from plaintiff's complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cnty. of Allegheny, 515 F. 3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

Enterprise, and Defendant Brandon Eyerly serves as the vice president and secretary of Defendant Press Enterprise. (Id. ¶¶ 11-12).

Defendant Press Enterprise employed Plaintiff Keith Dawn from October 25, 2017 through March 25, 2022. (Id. ¶ 7). Defendant Paul and Brandon Eyerly were plaintiff's immediate supervisors during his employment. (Id. ¶ 13).

Defendant's place of business is in Bloomsburg, Pennsylvania. (Id. ¶ 9). During his employment, plaintiff resided in New Jersey with his wife. (Id. ¶ 17). Plaintiff stayed in Bloomsburg on Monday through Friday and returned home to New Jersey on the weekends. (Id. ¶ 18).

Plaintiff's wife is an individual with an addiction related disability. (Id. ¶¶ 21-22). Several times during his employment, plaintiff expressed a desire to work from home to better assist his wife. (Id. ¶¶ 24, 28). His requests to work from home were rejected by Defendants Paul and Brandon Eyerly. (Id. ¶¶ 25, 37).

On January 20, 2022, several months after his last request to work from home to some degree, Defendant Paul and Brandon Eyerly informed him that they considered his request to work from home as a resignation, and they had found a replacement for him. (Id. ¶¶ 41-42). They thus terminated plaintiff's employment as of March 25, 2022. (Id. ¶ 51). Defendants published an article in its newspaper on April 17, 2022 which stated that plaintiff had retired. (Id. 56).

On May 4, 2022, plaintiff's attorney notified defendants that plaintiff intended to pursue a discrimination claim against them regarding his termination. (Id. ¶ 54). Per plaintiff, in retaliation, defendants opposed plaintiff's application for Unemployment Compensation benefits. (Id. ¶ 55). They informed the Pennsylvania Unemployment Compensation Bureau that plaintiff had resigned. (Id. ¶ 56).

The instant employment discrimination case followed. Plaintiff's complaint raises the following causes of action: Count One – Disability Discrimination in Violation of the Americans With Disabilities Act, ("ADA"), 42 U.S.C. 12101 et seq.; Count Two - Defamation, regarding the article which indicated that plaintiff had "retired"; Count Three - Tortious Interference With Prospective Business Relations, regarding the article which indicated plaintiff had "retired"; and Count Four Invasion of Privacy False Light, regarding defendants' claim that plaintiff had retired.

Defendants have filed a motion to dismiss plaintiff's complaint. The motion has been fully briefed and is ripe for disposition.

**Jurisdiction**

As plaintiff brings suit pursuant to a federal statute, the ADA, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or

treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**Legal Standard**

Defendants filed their motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir.

1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the

5

elements of a cause of action will not do.'" DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (quoting Twombly, 550 U.S. at 555).

The Supreme Court has counseled that a court examining a motion to dismiss should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. Next, the court should make a context-specific inquiry into the "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." Id. at 681.

**Discussion**

Defendants move to dismiss each count of the plaintiff's complaint, and the court will address each count in turn.

**I. ADA Claim**

Count One of plaintiff's complaint asserts a cause of action for association discrimination. That is, plaintiff claims that defendants terminated him because of his association with his wife who suffered a disability. (Doc. 1, Compl. ¶¶ 59-64).

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate against a qualified

individual on the basis of disability" includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." 42 U.S.C. § 12112(b)(4). Claims based on this provision are referred to as ADA association or ADA association discrimination claims. See Erdman v. Nationwide Ins. Co., 582 F.3d 500, 504 (3d Cir. 2009); Barthalow v. David H. Martin Excavating, Inc., No. 1:05-CV-2593, 2007 WL 2207897, at *3 (M.D. Pa. July 30, 2007)(Rambo, J).

The ADA association provision, 42 U.S.C. § 12112(b)(4), however, "does not obligate employers to accommodate the schedule of an employee with a disabled relative[,]" like the reasonable accommodations provisions set forth at 42 U.S.C. § 12112(b)(5)(A)-(B). See Erdman, 582 F.3d at 510 ("Although refusal to 'mak[e] reasonable accommodations' may constitute illegal discrimination against a disabled *employee*, 42 U.S.C. § 12112(b)(5), the plain language of the ADA indicates that the accommodation requirement does not extend to *relatives* of the disabled.")(emphasis in original)(further citations omitted).

To establish a *prima facie* case of association discrimination, a plaintiff must prove the following:

> (1) the plaintiff was "qualified" for the job at the time of the adverse employment action;

7

> (2) the plaintiff was subjected to adverse employment action;
>
> (3) the plaintiff was known by her employer at the time to have a relative or associate with a disability; [and]
>
> (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.

Dodson v. Coatesville Hosp. Corp., 773 F. App'x 78, 83, n. 8 (3d Cir. 2019)(citing Den Hartog v. Wasatch Acad., 129 F.3d 1076, 1085 (10th Cir. 1997)(further citation omitted); see also Erdman v. Nationwide Ins. Co., 621 F. Supp. 2d 230, 234 (M.D. Pa. 2007), aff'd in part, vacated in part, 582 F.3d 500 (3d Cir. 2009)(citations omitted).

Here, defendants focus on the third element of the ADA Association *prima facie* case, that is that the plaintiff was known by them to have a relative or associate with a disability. The complaint, however, states that plaintiff did inform defendants of his wife's disability. (See, e.g., Doc. 1, Compl. ¶¶ 23, 24, 31). Defendants further argue that the defendants did not understand the plaintiff's wife's addiction to be a disability as defined under the ADA. This, however, is not a matter that can be dealt with at the motion to dismiss stage as it is involves an analysis of the facts and the parties have yet to proceed through discovery.

Next, defendants argue that plaintiff has not alleged that they terminated plaintiff's employment due to his wife's addiction. A fair reading of the complaint reveals that the plaintiff alleges that he was terminated due to his wife's

8

addiction. He asked several times to work from home. The final time he asked defendants indicate that they construed that as a resignation. The complaint specifically states that defendants "terminated [plaintiff's] employment based upon unfounded fears and assumptions that [plaintiff's] relationship with his disabled wife would cause [plaintiff] to have future absences from work." (Id. ¶ 50).

The Third Circuit Court of Appeals has indicated that employment decisions "motivated by unfounded stereotypes or assumptions about the need to care for a disabled person may be fairly construed as 'because of the disability' itself." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 511 (3d Cir. 2009). That is precisely what the plaintiff has alleged here. Accordingly, the defendants' motion to dismiss Count One of the complaint will be denied.

## II. Count Two

Count Two of the complaint alleges a cause of action for defamation based upon the article which appeared in defendants' newspaper that indicated plaintiff had retired. (Doc. 1, Compl. ¶¶ 65-75). Plaintiff "did not intend to retire or otherwise end his career, but rather continued to seek work in his profession." (Id. ¶ 73). The statement that plaintiff had retired "damaged [plaintiff's] reputation and lowered him in the estimation of the community, including but not limited to

future prospective employers." (Id. ¶ 74). Next, defendants attack this state law tort claim for defamation.

To establish a claim for defamation under Pennsylvania law, the plaintiff must demonstrate the following:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion.

Balletta v. Spadoni, 47 A.3d 183, 196-97 (Pa. Commw. Ct. 2012).

Defendants raise two challenges to Count Two. First, they claim that the individual defendants cannot be held to have published the allegedly defamatory statement. Second, they argue that the statement that was published cannot be deemed to have a defamatory character. The court will address each issue in turn.

### A. Individual Defendants

Defendants argue that the individual defendants, Paul and Brandon Eyerly, cannot be held liable for defamation because they did not write the article which allegedly defamed plaintiff. The complaint alleges, however, that the article appeared in the newspaper published and distributed by an entity where Defendant Paul Eyerly serves as president and Defendant Brandon Eyerly serves as the vice president and secretary. (Id. ¶¶ 11-12, 57). These allegations

are sufficient at the motion to dismiss stage to establish that the individual defendants "published" the defamatory statement. Of course, the court's conclusion may change once the parties proceed through discovery and the matter proceeds to a summary judgment motion or trial.

### B. Defamatory Character of the Communication

Next, defendants argue that they cannot be held liable for defamation because the statement plaintiff complains of cannot be capable of a defamatory meaning.

"Under Pennsylvania law, courts act as gatekeepers to determine whether statements are incapable of defamatory meaning in deciding whether any basis exists to proceed to trial." Baletta, 47 A.3d at 197. It is initially the court's task to determine if a communication could be construed as defamatory and the final determination is for the jury to make. Id.

"A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him. A communication is also defamatory if it ascribes to another conduct, character or a condition that would adversely affect his fitness for the proper conduct of his proper business, trade or profession." Krajewski v. Gusoff, 53 A.3d 793, 802-03 (Pa. Super. Ct. 2012).

Here, although the statement at first glance appears innocuous, a jury could conclude that the statement is defamatory. The language used in the article indicates that plaintiff has completely left his professional career. Prospective employers who read the article would be less likely to offer employment to someone who they believe have "retired." Moreover, prospective employers might doubt plaintiff's commitment and ambition if they read that he had retired. Thus, the statement in a sense relates to plaintiff's fitness for the conduct of his profession including a lack of ambition and commitment. The defendants' motion to dismiss the defamation count on this ground will thus be denied.

## III. Invasion of Privacy False Light

The fourth count of plaintiff's complaint asserts a cause of action for invasion of privacy – false light. (Doc. 1, Compl. ¶¶ 82-87). With regard to this tort, Pennsylvania law provides as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if
>   (a) the false light in which the other was placed would be highly offensive to a reasonable person, and
>   (b) the actor had knowledge of or acted in a reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Krajewski v. Gusoff, 53 A.3d 793, 805-06 (Pa. Super. Ct. 2012) quoting

RESTATEMENT (SECOND) TORTS, § 652E. The Third Circuit Court of Appeals has

explained that a plaintiff must demonstrate that the defendant publicized a highly offensive statement with knowledge or in reckless disregard of its falsity. Graboff v. Colleran Firm, 744 F.3d 128, 136-37 (3d Cir. 2014).

Here, defendants argue that the claim that plaintiff has retired cannot be considered highly offensive for the same reasons that it cannot be deemed defamatory. The court finds, however, for the same reasons as set forth above with regard to defamation, that a jury could conclude that the statement from the defendants could be considered highly offensive.

## IV. Tortious Interference with Prospective Business Relations

Count Three of plaintiff's complaint asserts a cause of action for tortious interference with prospective business relations. (Doc. 1, Compl. ¶¶ 76-81). Plaintiff claims that defendants intentionally published an untruthful report that he had retired and ended his career in the publishing industry. (Id. ¶ 78). Per plaintiff, they did so with the intention of harming his reputation and preventing him from obtaining other employment. (Id. 79).

To establish the tort of interference with prospective business relations, a plaintiff must establish:

> 1) a prospective contractual relation;
> 2) purpose or intent on the part of defendant to harm plaintiff by preventing the relation from occurring;
> 3) that the defendant lacks privilege or justification; and
> 4) actual damages resulting from the defendant's conduct.

13

InfoSAGE, Inc. v. Mellon Ventures, L.P., 896 A.2d 616, 627 (Pa. Super. Ct. 2006).

Here, plaintiff alleges that the defendants interfered with his prospective employment opportunities. The defendants argue that in the complaint, the plaintiff must list with specificity the opportunities he applied for and was denied due to the defendants' intentional interference. In support of their position, the defendants rely on Arpaio v. Cottle, 404 F. Supp.3d 80, 86 (D.D.C. 2019), which does indicate that a plaintiff must list in his complaint the specific opportunities lost in an interference with business relations case. Id. This case is from the United States District Court for the District of Columbia and is not applying Pennsylvania law. It is, however, a federal case discussing the burden a plaintiff bears to plead a cause of action sufficiently to overcome a motion to dismiss and is somewhat persuasive in light of Pennsylvania law on the issue.

The Pennsylvania Superior Court has explained as follows:

> "Defining a 'prospective contractual relationship' can be difficult. As our Supreme Court has commented, 'to a certain extent, the term has an evasive quality, eluding precise definition. It is something less than a contractual right, something more than a mere hope.' " Phillips[ v. Selig, 959 A.2d 420,] 428 [(Pa. Super. 2008)] (quoting in part Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 412 A.2d 466, 471 (1979)). "[A]nything that is prospective in nature is necessarily uncertain. We are not here dealing with certainties, but with reasonable likelihood or probability. There must be something more than a mere hope or the innate optimism of the salesman." Phillips at 428 (quoting Glenn v. Point Park College, 441 Pa. 474, 272 A.2d 895, 898–99 (1971)).

14

Foster v. UPMC South Side Hosp., 2 A.3d 655, 665 (Pa. Super. Ct. 2010).

In Foster, the Pennsylvania Superior Court granted a motion to dismiss the plaintiff's interference with prospective contractual relations where, *inter alia,* the plaintiff had failed to plead facts to support an inference that the plaintiff would enter a contract with any of the entities named in the complaint as entities with which the plaintiff had a prospective contractual relationship. Id. Likewise, in the instant matter, plaintiff merely alleges that he sought, and continues to seek, to enter into employment with third-party prospective employers. (Doc. 1, Compl. ¶ 77). He further alleges defendants acted to harm his reputation and prevent him from obtaining other employment by indicating that he had retired. (Id. ¶ 79). Plaintiff does not provide any details at to the prospective employment relationships with which the defendants interfered. More specificity is needed to properly plead this cause of action.

Before dismissing a complaint for failure to state a claim upon which relief may be granted, however, the court must grant the plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3rd Cir. 2002). Accordingly, the court will dismiss Count Three of the complaint, but allow the plaintiff fourteen (14) days to file an amended complaint to provide more specificity with regard to the prospective employment contracts with which the defendants allegedly interfered.

## Conclusion

For the reasons set forth above, the defendants motion to dismiss will be granted in part and denied in part. The motion will be granted with regard to Count Three Tortious Interference With Prospective Business Relations, and denied in all other respects. The plaintiff will be granted fourteen (14) days to file an amended compliant to correct the deficiencies with Count Three as addressed above. Failure to file an amended complaint will result in the case proceeding with regard to only Counts One, Two, and Four. An appropriate order follows.

Date: 7/29/24

JUDGE JULIA K. MUNLEY
United States District Court